## Sposito v. Fortuner

*James Sposito,* pro se.
*David B. Hiscox,* for defendant.

CORBETT, *J.,* March 25, 2003—

## ORDER

And now, March 25, 2003, upon consideration of the plaintiff/counterclaim defendant's (Sposito or plaintiff) motion for summary judgment filed to defendants/counterclaim plaintiffs (Fortuner or defendants) counterclaim, it is hereby ordered and decreed that Sposito's motion is denied for the reasons set forth herein.

The facts in this case indicate that the defendants retained plaintiff to represent them to object to the administration and accounting in the estate of Joseph Fortuner Sr. A fee agreement was allegedly signed by the parties on or about August 4, 1996, which read, among other things:

"(1) I, hereby agree to compensate my attorney as follows:

"(a) Should the case be settled without the necessity of litigation, my attorney will be compensated at the rate of $150 per h[ou]r.;

"(b) Should the case be litigated, my attorney shall be compensated by a fee of $1,000 per day; all fees, costs and expenses are to be paid by ourselves separate and apart from any attorney fees or deducted from our settlement to reimburse our attorney for money he may choose to advance; . . . ."

Sposito also maintains he forwarded 14 statements to the Fortuners which indicated the amount he was billing and the work he did. A review of the billing statements shows that the first entry was made on June 30, 1996 and the last entry is dated April 27, 1998 with each statement listing the client's name as Michael Fortuner.

On or about June 2, 1998, Sposito filed his complaint seeking $26,486.30, interest, costs and attorney fees. On or about July 17, 1998, Fortuners filed what they claim to be an answer along with a new matter and counterclaim. The pleading contains a notice that states:

"We are contesting your actions assumpsit & trespass."

Thereafter, defendant either admitted or denied all the averments made in Sposito's complaint, some without explanation or comment. On the pages which followed, the Fortuners averred why they requested an award in the amount of $150,000 in damages from the plaintiff. The Fortuners averred 15 paragraphs of allegations against Mr. Sposito which included claims of negligence. On July 20, 1998, the Fortuners filed an amendment to their July 17 answer.

On or about September 10, 1998, Sposito filed a motion for judgment on the pleadings and motion for summary judgment. On or about January 15, 1999, the date set for argument on the motion, the Honorable Judge

Nealon allowed defendants five additional days to file a supplemental memorandum of law since their counsel only entered his appearance on that day. On January 20, 1999, after the response was filed, Judge Nealon denied Sposito's motion for judgment on the pleadings and motion for summary judgment since genuine issues of material fact remained.

On or about October 17, 2002, Sposito filed preliminary objections to defendants' answer to complaint and a request for general denials to be deemed admitted.[1,2] On November 27, 2002, defendant, Michael Fortuner, filed an amended answer with new matter and counterclaim.[3] In the counterclaim, Fortuner alleged legal malpractice against Sposito for his work related to the estate of Joseph Fortuner. On December 10, 2002, Sposito filed his answer and new matter to defendants' counterclaim. On December 11, 2002, Sposito filed this motion for summary judgment to defendants' counterclaim seeking dismissal of the legal malpractice portion of the counterclaim. On January 2, 2003, Sposito filed a supplemental brief.[4] The record shows that Sposito filed a motion for

---

1. The only answer filed by the Fortuners was that filed on July 19, 1998. Prior to these preliminary objections, no additional answer was filed. These preliminary objections are to address the answer filed some four years ago.

2. Ruth Fortuner died on February 14, 2001.

3. The parties dispute whether the new matter and counterclaim were part of what they stipulated to in lieu of filing a response to the preliminary objections.

4. Specifically, what Sposito filed was a "supplemental (sic) brief in support of plaintiff's motion to dismiss counterclaim filed by original defendant." In the body of same, Mr. Sposito states:

"The moving party now comes forward and files a supplemental brief to support his motion to dismiss and demurrer based on

summary judgment and that is what is before this court at this time. While prior to filing the summary judgment, Sposito did file preliminary objections, the record shows that an amended answer, new matter and counterclaim for which Sposito filed an answer and new matter. Upon filing his answer, the preliminary objections were moot and there is no demurrer before this court. This court will treat the supplemental brief as a supplemental brief to the motion for summary judgment. On January 13, 2003, Fortuners filed their brief in opposition. Oral argument on same was held on March 12, 2003. This matter is now ripe for decision.

Pennsylvania Rule of Civil Procedure 1035.2 provides two bases for the entry of summary judgment prior to trial. It may be granted while discovery is still pending where "no genuine issue of material fact as to a necessary element of the cause of action or defense" could be established by additional discovery or expert report. *Manzetti v. Mercy Hospital of Pittsburgh*, 741 A.2d 827, 831 (Pa. Commw. 1999). It may also be granted after the relevant pleadings are closed, but within such time as not to unreasonably delay trial, as a matter of law:

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports,

---

defendant's failure to make effective service and get leave of court to amend a complaint, and failure of the defendant to file a claim within the statutory two years as required by statute."

an adverse party who will bear the burden of proof at trial has failed to producce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2.

The party moving for summary judgment has the burden of proving no genuine issue of material fact exists. *Laich v. Bracey,* 776 A.2d 1022 (Pa. Commw. 2001). In ruling on a motion for summary judgment, the record and any inferences therefrom "must be viewed in the light most favorable to the non-moving party." *Id.* at 1024. "[A]ny doubt as to the existence of a genuine issue of material fact must be resolved against the moving party." *Id.*

When considering a motion for summary judgment, the court must accept as true all well-pleaded facts of the non-moving party. *Goldberg v. Delta Tau Delta,* 418 Pa. Super. 207, 613 A.2d 1250 (1992), *appeal denied,* 534 Pa. 639, 626 A.2d 1158 (1993). It must give the non-moving party the benefit of all reasonable inferences to be drawn therefrom. *Id.* The party seeking to avoid entry of summary judgment may not merely rest on their pleadings. Instead, that party must show that a genuine issue exists which requires a trial. *Buckno v. Penn Linen & Uniform Service Inc.,* 428 Pa. Super. 563, 631 A.2d 674 (1993), *appeal denied,* 538 Pa. 639, 647 A.2d 895 (1994). Summary judgment may be granted only in those cases where the right to summary judgment is clear and free from doubt. *Laich,* 776 A.2d at 1024.

Sposito maintains the claim of legal malpractice in the counterclaim "seeks to change a cause of action and cir-

cumvent the statute of limitations which is already rough." (See supplemental brief, pg. 2.) Sposito maintains the legal malpractice claim is beyond the two-year statute of limitations and must be dismissed. Even if that were not so, Sposito maintains that defendants' legal malpractice claim should be barred since the defendants failed to seek approval to amend their answer under Pa.R.C.P. 1033.

Defendants respond by saying the counterclaim is not an amendment and therefore no court approval was necessary or required. Instead, defendants maintain the counterclaim was originally filed on or about July 17 and 20, 1998, when the defendants, who were acting pro se at the time, provided notice with their answer.

The issue therefore, is whether the Fortuners' legal malpractice claim was raised within the applicable statute of limitations, namely two years. In order to answer that question, it is necessary to review the answer provided by the Fortuners on July 17 and 20, 1998, which would have been within the statutory period. On the first page of the answer, under the caption it contains the words "Notice—We are contesting your actions assumpsit & trespass." On page two of their answer, they admit and deny each of the accusations made by Sposito. On page three, defendants write the following:

"Wherefore for all of the reasons above but not limited to such the [sic] defendants Michael & Ruth Fortuner beg the court to deny James A. Sposito any amount and award us $150,000 for pain & suffering.

"(1) Neglected to explore unrecorded deed.

"(2) Neglected to have handwriting expert examine notes of Marie Browns.

"(3) Neglected to question why the rent collected by Joe & Rita in 1991 went from $50,900 to $31,000 collected by Al & Joe Jr. in 1992 the administrators [sic].

"(4) Neglected to have witnesses that were to testify in court by subpoena namely Marie Brown & Ilean Ferrette.

"(5) Neglected to have expert witnesses testify on our behalf as the fair market value on rental space of Al Fortuner as Nassar did for Al Fortuner value per sq[uare] foot $1.25 a sq. foot plus 50 [cents] a sq[uare] foot for heat."

The Fortuners raise eight other allegations against Mr. Sposito as well.

While the averments within the answer certainly claim negligence against Mr. Sposito, it is clear the answer does not contain the word "counterclaim" anywhere therein. However, our courts have consistently adhered to form over substance. That is, where the elements to a cause of action are adequately set forth, a pro se complainant will not be dismissed just because it is not artfully drafted. *Williams v. Syed,* 782 A.2d 1090 (Pa. Commw. 2001); *Bell v. Horn,* 762 A.2d 776 (Pa. Commw. 2000) (Allegations of a pro se complainant are held to a less stringent standard than that applied to pleadings filed by attorneys.); *Hill v. Thorne,* 544 Pa. 632, 675 A.2d 1249 (1993) (Where the three necessary elements of cause of action for legal malpractice are adequately set forth, pro se complaint will not be dismissed just because it is not artfully drafted.).

An individual may sue his attorney for malpractice under either trespass or assumpsit theory. *Fiorentino v.*

*Rapoport,* 693 A.2d 208 (Pa. Super. 1997). In order to sustain a legal malpractice action, it must be shown that "(1) the employment of the attorney or other basis for duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that the attorney's failure to exercise the requisite level of skill and knowledge was the proximate cause of damage to the plaintiff." *Id.* at 212.

A review of the Fortuners' pleadings clearly shows that they averred the elements of a legal malpractice claim against their former counsel, Mr. Sposito. In their July 17, 1998 filing, the Fortuners either specifically or implicitly averred that they employed Mr. Sposito, that he was negligent and/or failed to exercise ordinary skill or knowledge and that they suffered damage as a result of his negligence. Each of these was clearly set out in their pleading. Since the elements of legal malpractice were originally pled in the defendants' original response, the statute of limitations did not run.[5]

Moreover, because the amendment was not a new cause of action, but instead a clarification of what was previously pled, it was not necessary for the defendants/counterclaim plaintiffs to seek this court's permission before doing same. For these reasons, plaintiff's motion for summary judgment is denied.

---

5. The alleged fee agreement was entered into in August 1996. The negligence claim was filed less than two years later and, according to the plaintiff's billing sheets, only a few months after their relationship was terminated.